**TEXAS GENERAL INDEMNITY
COMPANY, Appellant,**

v.

**Max G. HERNANDEZ, Appellee.**

**No. 14356.**

Court of Civil Appeals of Texas.

San Antonio.

March 3, 1965.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellant.

Rudy Rice, David D. Adams, James H. Brannon, San Antonio, for appellee.

MURRAY, Chief Justice.

This is a workmen's compensation action brought by Max G. Hernandez against Texas General Indemnity Company for compensation benefits allegedly due him for injuries sustained in an industrial accident on November 15, 1962.

The trial was to a jury and, based upon the verdict of the jury and certain stipulations, judgment was rendered awarding Hernandez compensation for permanent partial incapacity in the sum of $12.01 per week for a period of 300 weeks, $960.80 of which sum had already accrued; from which judgment Texas General Indemnity Company has prosecuted this appeal.

Appellee testified that on November 15, 1962, while he was working during the course of his employment with Roegelein Provision Company, as a janitor or clean-up man, and while he was dragging a water hose his feet slipped and he fell into a hog chute and bumped his head. He didn't know what happened for a minute or so, because he was on his knees when he opened his eyes; he blacked out as a result of this fall and felt pretty bad for the remainder of that day while working, and the pain in the top of his head bothered him that night. He reported to his employer the next day and told him that he was feeling pretty bad over his neck. "Q When did that pain in your neck start? A Well, about the second or third day. Second day." He had never before had a pain in his neck, and the medication furnished him by the company doctor did not do him any good. He continued to work for his employer, continued to feel bad, and still had a burning sensation in his head. He did not complain to his employer or fellow workers because he was afraid they might

fire him. He went to see another doctor, because the doctor he had seen did not help him. The pain in his neck and head was still bothering him at the time of the trial, but he could not lay off from work because of economic necessity. On January 1, 1963, he went to work at Fort Sam Houston as a janitor, because it was a better job than the one he had with Roegelein. He did not complain to his new employer because he was afraid they would fire him, and because the job was important to him. He began to get nervous and went to see a doctor for his eyes which began to bother him after he bumped his head. He went to see still another doctor but did not get any relief from their treatments.

Rosa Hernandez, wife of appellee, testified that since the day of the accident he has complained of pains in his neck and head, and that he never complained before.

Dr. Terbieten, a chiropractor, testified that appellee had a very acute spasm of the muscles in the nuchal area, which are in the back of his neck. These spasms were so severe that appellee could not rotate his neck the way he should. The ligaments, due to trauma, had become fibrosed. In other words, "they had become traumatosed, hurt, and the reaction to trauma is a fibrotic condition." There was other testimony introduced.

Appellee did not work 210 days during the year before he had the accident, but there was a man in the same class in the area who did work more than 210 days, and it was stipulated by the parties that his average daily wage was $13.87, which figures $80.02 per week. The jury found that appellee did sustain an accidental injury to his body on or about November 5, 1962; that it was sustained in the course of his employment with Roegelein Provision Company, and that such injury was a producing cause of his incapacity to work, that his incapacity was partial and permanent, and that it began on November 16, 1962; that his average weekly wage-earning capacity during the existence of such incapacity will be $60.00 per week.

Appellant contends that there is no evidence, or the evidence is insufficient to support the findings of the jury or, in any event, the findings of the jury are so against the overwhelming preponderance of the evidence as to be manifestly wrong and unjust.

The evidence shows that, as a matter of fact, appellee has never lost any time from his job by reason of this injury. He was working for $60.00 a week when he was injured and is now working for $60.00 a week. However, by stipulation it was agreed that under the law appellee's average weekly wage prior to his injury was $80.02 per week, and the evidence shows that his earning capacity is now $60.00 per week, or $20.02 less than his average weekly wage before he received his injury, and therefore the trial court did not err in allowing appellee to recover on the basis of a loss of earning capacity of $20.02 per week. If appellee had worked more than 210 days during the year preceding the time of his injury, his average weekly wage would have been fixed by what he was earning, but under the law his average weekly wage had to be fixed by what some other person who had worked 210 days during the year was earning, so on this basis appellee has a loss of $20.02 per week in earning capacity.

■ The fact that appellee has continued to work and earn money, and at the same rate of pay as before the injury does not establish conclusively that he has not suffered loss of earning capacity. Traders & General Ins. Co. v. Vaughn, Tex.Civ. App., 317 S.W.2d 800; Consolidated Cas. Ins. Co. v. Smith, Tex.Civ.App., 309 S.W.2d 580; Emp. Ins. Ass'n. v. Garza, Tex.Civ. App., 308 S.W.2d 521; Consolidated Cas. Ins. Co. v. Newman, Tex.Civ.App., 300 S.W.2d 160.

The fact that appellee has continued to work and to earn as much money at the

same kind of a job he had before his injury, due to the necessity of providing for his wife and children, does not prove that his earning capacity has not been lessened, as found by the jury.

■ If the jury had found that appellee was totally and permanently disabled, as it did in the case of Texas Emp. Ins. Ass'n. v. Moran, Tex.Civ.App., 261 S.W.2d 855, we would agree that such a finding was so against the great weight and preponderance of the evidence as to be clearly wrong, but the jury has fixed his disability at approximately 25% of his capacity and we are unable to say that such finding is clearly wrong.

The judgment of the trial court is affirmed.